**STATE of Iowa, Appellee,**

v.

**David Lee EPPS, Appellant.**

**No. 66735.**

Supreme Court of Iowa.

March 17, 1982.

Rehearing Denied April 14, 1982.

Douglas V. Coonrad, Hudson, for appellant.

Thomas J. Miller, Atty. Gen., Michael K. Jordan, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK, and McGIVERIN, JJ.

McCORMICK, Justice.

Defendant David Lee Epps appeals from his conviction and sentence for first-degree murder in violation of sections 707.1 and 707.2, The Code. He contends the trial court erred in overruling his pretrial motion to compel the State to carry out a plea bargain and in overruling a motion to dismiss or for alternative relief based on alleged State intimidation of a defense witness. Because we find no merit in defendant's contentions, we affirm.

The charge was based on an allegation that defendant and his brother John killed an 86-year-old man during a burglary of the victim's Waterloo home during the night of July 17, 1980. A juvenile judge transferred defendant's case to the criminal jurisdiction of the district court.

Defendant originally alleged he did not participate in the offense. Police had discovered his fingerprints on a jewelry box in the home, but defendant maintained they were placed there during a break-in of the home approximately two weeks earlier. Plea discussions ensued between assistant county attorney Jay Nardini and defense counsel Donald Gottschalk. Nardini said the State would consider accepting a plea to second-degree murder if defendant would offer sufficient helpful information and testimony against his brother. Three days later Gottschalk notified Nardini defendant

would accept the plea bargain. He would plead guilty to second-degree murder and testify that his brother participated in the crime. Nardini said he would have to check with the county attorney before making a commitment for the State. After determining that the county attorney would not approve the agreement, Nardini notified Gottschalk it would not be accepted.

Gottschalk denied that the agreement was contingent on the county attorney's approval. He moved to compel the State to honor the plea bargain. In doing so, he alleged that defendant had detrimentally relied on the State's offer when he provided information which was inconsistent with his prior defense. Gottschalk pointed out that defendant's change of position prevented him on ethical grounds from presenting the defense he had planned based on defendant's prior denial of involvement. *See State v. Whiteside*, 272 N.W.2d 468 (Iowa 1978).

The motion was argued before Judge Joseph C. Keefe. In overruling the motion, Judge Keefe did not find it necessary to decide whether the State's offer was contingent. He determined that defendant had not detrimentally relied on the State's offer because he had not entered a guilty plea and the plea discussion would not be admissible against him. *See* Iowa R.Crim.P. 9(5).

Mr. Gottschalk was permitted to withdraw as defendant's attorney, and present counsel was appointed in his stead. Defendant waived a jury, and the case was tried to Judge Peter Van Metre. Judge Van Metre said he would not read the record relating to plea discussions. Through present counsel defendant employed his original defense that he did not participate in the offense.

During trial, defendant testified he had entered the victim's home two weeks before the murder and said Billy Matlock saw him do so. The 16-year-old Matlock testified he had seen defendant enter the home and steal a radio on the earlier occasion. Despite vigorous efforts to impeach him, he stuck to his story.

Two days later the State called Matlock as a rebuttal witness, and he recanted his previous testimony. He said he had testified to seeing David go in the house to try to help him. Subsequently he said he decided he should tell the truth. He said he discussed the prior testimony with his parents and with the police but denied anyone threatened him to get him to change it.

At the time fixed for the court to return its verdict, defendant moved that the case be dismissed, or alternatively that a mistrial be declared or a hearing be held. In support of his motion he alleged the police intimidated Matlock into changing his testimony. Judge Van Metre overruled the motion because he said his verdict was "not dependent in a crucial sense on the two versions [Matlock] gave of the events of early July."

He then issued written findings and a verdict convicting defendant of first-degree murder. The findings referred to Matlock's defense and rebuttal testimony but did not indicate which testimony the judge believed.

After being sentenced, defendant appealed.

I. *The plea bargain issue.* In refusing to order the State to carry out the alleged plea agreement, the trial court found defendant had not detrimentally relied on it. Defendant contends he did detrimentally rely on the plea bargain when he confirmed his participation in the offense and agreed to testify against his brother.

Under Iowa R.Crim.P. 9(5) a plea discussion that does not result in a plea of guilty is inadmissible. Thus any admission made by defendant during plea discussions could not be used against him. Furthermore, he could not be compelled to waive his privilege against self-incrimination if called as a witness in his brother's trial. He argues he was harmed because the State's withdrawal from the plea agreement required him to change lawyers. We are not persuaded. For one thing the record shows he sought to change lawyers for other reasons. For another the change in lawyers

enabled him to present the defense that he asserted before the plea discussions occurred.

Therefore defendant suffered no prejudice from the State's refusal to carry out the alleged agreement. He argues, however, that detrimental reliance can exist without prejudice. It is difficult to see how reliance could be detrimental if it were not prejudicial. In any event, detrimental reliance has been equated with prejudicial reliance in our cases. *See, e.g., State v. Strable,* 313 N.W.2d 497, 499 (Iowa 1981).

The court stated the detrimental reliance rule in *State v. Edwards,* 279 N.W.2d 9, 11 (Iowa 1979): "The State may withdraw from a plea bargain at any time prior to, but not after, actual entry of the guilty plea by defendant or other actions by defendant constituting detrimental reliance on the arrangement." In doing so the court adopted the reasoning in *People v. Heiler,* 79 Mich.App. 714, 721–22, 262 N.W.2d 890, 895 (1977) in which a prejudice standard was delineated. The court thus treated detrimental and prejudicial reliance as synonymous. The crucial test of detriment or prejudice is whether the defendant has suffered harm from reliance on the plea bargain. *See State v. Wenzel,* 306 N.W.2d 769, 771 (Iowa 1981) ("We also cannot find any harm to the defendants in this case since they were allowed to withdraw their pleas.").

We decline to follow *State v. Brockman,* 277 Md. 687, 357 A.2d 376 (1976), to the extent it may support defendant's contrary argument. Moreover, we reject defendant's contention that detrimental reliance without prejudice was the basis for requiring the State to perform a plea bargain in *State v. Kuchenreuther,* 218 N.W.2d 621 (Iowa 1974). In that case the prosecution agreed to prosecute the defendant on a misdemeanor only, and the defendant agreed to provide information about other crimes, to testify concerning certain criminal activities, and to make restitution. After the defendant performed his part of the bargain, the State charged him with and convicted him of a felony. Prejudicial reliance was amply demonstrated in that case.

In the present case defendant merely discussed what his performance would be. Evidence of the discussions could not be used against him. It is not necessary to decide whether he would have been prejudiced if attorney Gottschalk had remained in the case and refused to permit defendant to give what the attorney believed to be false testimony. Because defendant used his original defense after changing attorneys and was not otherwise prejudiced, he did not detrimentally rely on the alleged plea bargain.

The court did not err in overruling defendant's motion to compel the State to perform it.

II. *The witness intimidation issue.* Billy Matlock gave a written statement to the police four days after the alleged murder. In his statement he said nothing about having seen defendant enter the victim's home on a prior occasion. When questioned four separate times before trial by defense counsel, he denied seeing defendant break into the home on any occasion prior to the homicide. Just before being called as a defense witness for another purpose, he disclosed to defense counsel that he had seen defendant enter the home at the earlier time. He then testified about the incident. His testimony was substantially consistent with defendant's version of the incident.

On cross-examination, Matlock acknowledged his statements to the police and to defense counsel. He insisted he had previously been afraid and did not want to become involved. He said he changed his mind because he wanted to help defendant by telling the truth. He was vigorously cross-examined concerning his knowledge of details of the alleged prior break-in. The following colloquy also occurred:

Q. You know what perjury is, Mr. Matlock? A. Yes, I know what perjury is.

Q. What is it? A. That's when you lie under oath.

Q. You think that's a serious offense? A. I know it is.

Q. You think it's wrong to lie? A. Yes.

Q. When you came up to the stand today you took an oath to tell the truth, didn't you? A. Yes.

Q. What you are telling us is the truth? A. Yes.

Q. Can you give me one good reason why we should believe you since you lied to the police and you lied to Mr. Coonrad? A. Because I, I think that if anyone was looking, going to be facing something heavy like that, you are going to protect yourself, you know.

No evidence was subsequently adduced to show that Matlock was threatened by or in behalf of the State. When Matlock recanted during his rebuttal testimony, he persisted in his denial of threats despite full cross-examination.

Defense counsel offered surrebuttal testimony of his secretary and Matlock's mother in an effort to show intimidation. After filing notice of appeal, defense counsel filed a professional statement setting out what his own testimony would be on the intimidation issue. The trial court did not have that information when it overruled defendant's motion to dismiss or for alternative relief based on the alleged intimidation. This appears to be the information counsel sought to add to the record when he requested an evidentiary hearing in his motion.

■ This court recently reviewed the principles governing witness intimidation in *State v. Ivy*, 300 N.W.2d 310 (Iowa 1980). It is improper to threaten a witness with criminal prosecution if he does not tell the "truth." When prejudice results, such conduct is reversible error. *Id.* at 314. No evidence of threats was offered in the present case.

■ The prosecutor's cross-examination of Matlock concerning his knowledge of perjury and its penalties was a legitimate effort to remind him of the significance of his oath. It was not intimidation. *See United States v. Stevenson*, 445 F.2d 25, 29 (7th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 108, 30 L.Ed.2d 99 (1971). The subsequent police contact with Matlock was potentially intimidating. Matlock, however, denied any improper effort had been made to influence him to change his testimony, and no evidence to the contrary was adduced.

■■ Even though defendant requested an evidentiary hearing on his motion, he had already had and exercised the opportunity to offer surrebuttal evidence on the issue. Nothing in defense counsel's professional statement added materially to the prior evidence. Therefore, considering the professional statement as a matter of grace, we still find no proof that Matlock was intimidated. Furthermore, because the trial court said the issue was not crucial to its verdict, no prejudice could have occurred even if intimidation were shown.

We hold that the trial court did not err in overruling defendant's motion.

No basis for reversal has been established.

AFFIRMED.