# IN THE COURT OF APPEALS OF IOWA

No. 13-0894
Filed January 28, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

vs.

**CHRISTOPHER CALVERT FITZPATRICK,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Clay County, Carl J. Petersen, Judge.


        Defendant appeals his convictions for voluntary manslaughter, first-degree robbery, and conspiracy to deliver methamphetamine. **CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.**


        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

        Christopher Calvin Fitzpatrick, Anamosa, appellant pro se.

        Thomas J. Miller, Attorney General, Alexandria Link, Assistant Attorney General, and Michael Houchins, County Attorney, for appellee.


        Considered by Doyle, P.J., Tabor, J., and Miller, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MILLER, S.J.**

Defendant Christopher Fitzpatrick appeals his convictions for voluntary manslaughter, first-degree robbery, and conspiracy to deliver a controlled substance (methamphetamine). There is a sufficient factual basis in the record to support Fitzpatrick's guilty pleas to these offenses. Fitzpatrick received ineffective assistance because defense counsel did not object to the court's failure to abide by the plea agreement or to the prosecutor's failure to correct the court's mistake. We affirm Fitzpatrick's convictions but vacate his sentences and remand the case for resentencing.

## I.     Background Facts & Proceedings

The minutes of evidence in this case provide the following facts. On August 28, 2012, Christopher Fitzpatrick was at a bar in Spencer, Iowa, when he overheard Edward Kitto say he had $350. Fitzpatrick and Kitto left the bar together and walked to the home of Christopher Hegel,[1] where they went onto the porch and smoked marijuana. According to Fitzpatrick, Kitto called him a "mooching n****r," and raised his fist, so Fitzpatrick punched him three times and Kitto fell down. Fitzpatrick left the porch and called his friend Cody Millard to ask for a ride home. According to Fitzpatrick, Kitto then got up and approached Fitzpatrick, again raising his fist. Fitzpatrick punched him several more times, and continued to hit him after he was on the ground.

When Millard arrived he assisted Fitzpatrick in dragging Kitto into Hegel's backyard. Millard hit Kitto once or twice and kicked him. Fitzpatrick took Kitto's

---

[1] Fitzpatrick and Hegel went to the bar together, but Hegel remained at the bar when Fitzpatrick left with Kitto.

wallet from his pants and removed some cash. While Fitzpatrick and Millard were in Hegel's backyard they heard Hegel and Jessica Kurth walking down the driveway of the home. Fitzpatrick and Millard drove away in Millard's vehicle. Hegel and Kurth found Kitto and called 911. Fitzpatrick stated he used the money he took from Kitto to purchase some food and liquor. There was also evidence Fitzpatrick purchased drugs with the money. Kitto died as a result of his injuries.

Fitzpatrick was charged with murder in the first degree, robbery in the first degree, and conspiracy to deliver a controlled substance (methamphetamine). Fitzpatrick entered into a plea agreement in which he agreed to plead guilty to voluntary manslaughter, in violation of Iowa Code section 707.4 (2011); first-degree robbery, in violation of section 711.2; and conspiracy to deliver a controlled substance, in violation of section 124.401(1)(c)(6). The State agreed to recommend he be sentenced to ten years, twenty-five years, and ten years, to be served consecutively.

A plea hearing was held on April 1, 2013. The court asked counsel if the plea agreement was binding on the court, and they stated it was not. In providing a factual basis for the charge of voluntary manslaughter, Fitzpatrick stated, "[W]e had got in a fight, and he called me a couple names. And we got in a fight." Fitzpatrick answered in the affirmative when asked by the court if he intentionally struck Kitto, Kitto died as a result of Fitzpatrick striking him, and Fitzpatrick struck Kitto by reason of sudden violent and irresistible passion, resulting from serious

provocation. Fitzpatrick then stated, "He called me some names, and then he came at me with his fist. That's how that happened."

For the charge of first-degree robbery, Fitzpatrick stated, "[A]fter he was knocked on the ground I took his wallet, took his money." The court asked Fitzpatrick if he assaulted Kitto in the process of taking his money, if he purposely inflicted a serious injury on Kitto, and if he assaulted Kitto in carrying out the theft, and Fitzpatrick answered, "Yeah."

In providing a factual basis for the charge of conspiracy to deliver methamphetamine, Fitzpatrick stated, "I was involved with some other people in the delivery of meth." Fitzpatrick agreed "the substance that was involved in that delivery of methamphetamine," was methamphetamine and the amount involved was five grams or less.

The case proceeded to a sentencing hearing on May 10, 2013. The State recommended the sentences set out in the plea agreement, and defense counsel stated, "I have nothing to add to the plea agreement." The court then stated the plea agreement was binding upon the court and sentenced Fitzpatrick in accordance with its understanding of the plea the agreement. The court stated Fitzpatrick's sentences were consecutive, "because of the bargained plea entered by the State of Iowa and Defendant," and "the severity of the offenses combined to result in the death of Edward Kitto." Fitzpatrick now appeals his convictions and sentences, claiming he received ineffective assistance of counsel.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A defendant has the burden to show by a preponderance of the evidence counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

## III. Factual Basis

Fitzpatrick claims he received ineffective assistance because defense counsel permitted him to plead guilty when there was not a sufficient factual basis to support his pleas. "It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis." *State v. Finney*, 834 N.W.2d 46, 50 (Iowa 2013). "On a claim that a plea bargain is invalid because of a lack of accuracy on the factual-basis issue, the entire record before the district court," including the minutes of evidence, "may be examined." *Id.* at 62. "Our cases do not require that the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." *Id.* It is not necessary to show the defendant is guilty; the court must be satisfied only that the facts support the crime. *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001).

**A.** Fitzpatrick asserts there is not a sufficient factual basis in the record to support his guilty plea to voluntary manslaughter. He contends the

facts would support the defense of justification, found in section 704.3. He also claims the record does not show his actions caused the death of Kitto.[2] He points out that Millard struck and kicked Kitto, and asserts Millard could have caused Kitto's death.

As the State notes, Fitzpatrick's claims on appeal improperly conflate possible defenses to the charge of voluntary manslaughter with the factual basis for the plea. "It is well established that a defendant's guilty plea waives all defenses and objections which are not intrinsic to the plea." *State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). "A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities." *Kyle v. State*, 322 N.W.2d 299, 304 (Iowa 1982).

Section 707.4 provides:

> A person commits voluntary manslaughter when that person causes the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a person and there is not an interval between the provocation and the killing in which a person of ordinary reason and temperament would regain control and suppress the impulse to kill.

During the plea colloquy Fitzpatrick stated he intentionally struck Kitto. He agreed that Kitto died as a result of Fitzpatrick striking him. He also agreed that he struck Kitto "solely by reason of sudden violent and irresistible passion as a— resulting from serious provocation." He stated Kitto called him names and they got into a fight. According to the minutes of evidence, Fitzpatrick continued to hit

---

[2] Fitzpatrick additionally raised this issue in a pro se brief. Our discussion of this issue addresses the issue as raised by appellate counsel and in the pro se brief.

Kitto after he was already down on the ground. Millard stated Fitzpatrick "kept hitting him over and over again," like Fitzpatrick "was possessed or trying to take something out on the old guy." We conclude there is a sufficient factual basis in the record to support Fitzpatrick's plea of guilty to the charge of voluntary manslaughter.

**B.** Fitzpatrick asserts there is not a sufficient factual basis in the record to support his plea of guilty to the charge of robbery in the first degree. He contends the record does not support a claim that he assaulted Kitto for the purpose of taking his wallet. He asserts that he struck Kitto because Kitto called him names and because of Kitto's aggressive behavior. He claims he did not formulate the intent to take money from Kitto's wallet until after the altercation was over.

Fitzpatrick was charged with robbery in the first degree, in violation of section 711.2, which provides, "A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon." The offense of robbery is defined as follows:

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
> 1. Commits an assault upon another.
> 2. Threatens another with or purposely puts another in fear of immediate serious injury.
> 3. Threatens to commit immediately any forcible felony.

Iowa Code § 711.1.

According to the minutes of evidence, Fitzpatrick overheard Kitto stating he had $350. Fitzpatrick had previously told his drug dealer "that he knows some people he could get the money from or some people he could rob" in order to purchase drugs. During the plea colloquy Fitzpatrick agreed that in the process of taking Kitto's money, he assaulted him. Fitzpatrick agreed he had purposely inflicted a serious injury on Kitto. He also agreed he assaulted Kitto in carrying out the theft. Fitzpatrick stated that after Kitto had been knocked on the ground he took his money. We conclude there is a sufficient factual basis in the record to support Fitzpatrick's guilty plea to first-degree robbery.

**C.** Fitzpatrick asserts there is not a sufficient factual basis in the record to support his plea of guilty to the charge of conspiracy to deliver a controlled substance (methamphetamine). He points out there is nothing in the minutes of evidence to support his guilty plea to this offense, and the State agrees.

The factual basis for this offense is found in the plea colloquy:

> Defendant: I was involved with some other people in the delivery of meth.
> The Court: Okay. Did that occur on August 28, 2012?
> Defendant: Yeah.
> The Court: And was the controlled substance methamphetamine?
> Defendant: Yes.
> The Court: Did you know the substance that was involved in that delivery of methamphetamine?
> Defendant: Yeah.
> The Court: Was the amount of methamphetamine involved in that delivery five grams or less?
> Defendant: Yes.

Section 124.401(1)(c)(6) is violated when a person "conspire[s] with one or more persons to manufacture, deliver, or possess with the intent to manufacture or deliver," five grams or less of methamphetamine. Fitzpatrick stated he was involved with other people in the delivery of methamphetamine. He agreed he knew the substance was methamphetamine and the amount involved was five grams or less. We conclude there is a sufficient factual basis for Fitzpatrick's plea of guilty to the offense of conspiracy to deliver methamphetamine.

## IV.    Sentencing

Fitzpatrick contends he received ineffective assistance because defense counsel did not object to the district court's mistaken belief it was bound by the sentencing recommendation in the plea agreement. Furthermore, defense counsel did not object to the prosecutor's failure to point out the court's mistake.

Near the beginning of the sentencing hearing the court stated, "The Court cannot find any reason not to concur with the plea agreement as it is binding upon the Court and includes mandatory sentences." Later, the court gave as one of the reasons for imposing consecutive sentences, "the bargained plea entered by the State of Iowa and the Defendant." At the plea hearing, however, the court had asked both the prosecutor and defense counsel if the plea agreement was binding on the court. The prosecutor stated, "I don't believe that we made it binding on the Court." Defense counsel stated, "That's correct, Your Honor." Neither defense counsel nor the prosecutor corrected the court's mistaken belief

during the sentencing hearing that it was bound by the sentencing recommendations in the plea agreement.

Defense counsel has an obligation to object if the prosecutor is not following the terms of the plea agreement. *State v. Fannon*, 799 N.W.2d 515, 522 (Iowa 2011). The supreme court has determined:

> If the State breaches a plea agreement during the sentencing hearing, a reasonably competent attorney would make an objection on the record to "'ensure that the defendant receive[s] the benefit of the agreement.'" "[N]o possible advantage could flow to the defendant from counsel's failure to point out the State's noncompliance. Defense counsel's failure in this regard simply cannot be attributed to improvident trial strategy or misguided tactics."

*Id.* (citations omitted). "When trial counsel fails to object to the prosecutor's breach of the plea agreement and thereby prevents the defendant from receiving the benefit of the plea agreement, the defendant is prejudiced." *State v. Bergmann*, 600 N.W.2d 311, 314 (Iowa 1999).

We believe there may also be a breach of an essential duty if defense counsel fails to object to the court's failure to abide by the terms of the plea agreement. In *State v. Malone*, 511 N.W.2d 423, 424 (Iowa Ct. App. 1993), in a written order the court stated its concurrence with a plea was a part or condition of the plea agreement. Thereafter at sentencing, which was held before a different judge, the court stated it was not bound by the plea agreement. *Malone*, 511 N.W.2d at 424. The court denied the defendant's request to withdraw the guilty plea. *Id.* We concluded the district court abused its discretion by not permitting the defendant to withdraw her guilty plea when the sentencing judge refused to accept the plea agreement. *Id.* at 425; *see also State v. Thompson*,

___ N.W.2d ___, ___, 2014 WL 7003808, at *7 (Iowa 2014) ("[N]either the district court nor the State violated the plea agreement requiring the court to allow Thompson the opportunity to withdraw his plea before sentencing."); *State v. Barker*, 476 N.W.2d 624, 628 (Iowa Ct. App. 1991) ("We determine the sentencing court abused its discretion by not honoring the plea agreement and not allowing the defendant to then withdraw his guilty plea.").

We conclude Fitzpatrick received ineffective assistance because defense counsel did not object when the court expressed the mistaken belief at the sentencing hearing that it was bound by the terms of the plea agreement or object to the prosecutor's failure to correct the court's mistake. *See State v. Horness*, 600 N.W.2d 294, 300 (Iowa 1999) (finding defense counsel failed to perform an essential duty by not objecting to the State's noncompliance with a plea agreement); *State v. Hallock*, 765 N.W.2d 598, 606 (Iowa Ct. App. 2009) (finding defense counsel failed to perform an essential duty by not correcting the court's failure to inform defendant of a special sentencing provision); *see also* ABA Standards for Criminal Justice: *Prosecution Function* 3-6.1(a) (3d ed. 1993) (stating a prosecutor has a duty "to assure that a fair and informed judgment is made on the sentence").

When there has been a breach of the plea agreement, "we will 'determine the appropriate remedy necessary to ensure the interests of justice are served—either withdrawal of the guilty plea or resentencing before another judge.'" *State v. Bearse*, 748 N.W.2d 211, 218 (Iowa 2008) (citations omitted). When the interests of justice are adequately served by remanding for resentencing, it is

unnecessary to expend judicial resources in starting the process anew. *Id.* We determine Fitzpatrick's sentences should be vacated and the case remanded for resentencing, giving him the benefit of the bargain by demanding specific performance of the plea agreement. *See Fannon*, 799 N.W.2d at 524.

We affirm Fitzpatrick's convictions, based upon his guilty pleas, to voluntary manslaughter, first-degree robbery, and conspiracy to deliver a controlled substance (methamphetamine). Fitzpatrick received ineffective assistance because defense counsel did not object to the court's failure to abide by the plea agreement or to the prosecutor's failure to correct the court's mistake. Therefore, Fitzpatrick's sentences are vacated, and the case is remanded for resentencing.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.**